UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-cr-20410-LENARD/Turnoff

UNITED STATES OF AMERICA,

v.

DEXTER EARL KEMP,

            Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the undersigned upon Defendant Dexter Earl Kemp's Motion

to Suppress. **[DE 306]**. This matter was referred to the undersigned by the Honorable Joan

A. Lenard, United States District Judge for the Southern District of Florida. **[DE 309]**. A

hearing on this motion was held on October 18, 2010. **[DE 401]**. The Court has considered

the written and oral arguments, the testimonial and record evidence, the court file, the

applicable law, and is otherwise duly advised in the premises.

### Procedural Background

At the conclusion of the hearing, the parties were afforded the opportunity to submit

post-hearing memoranda by no later than October 20, 2010. On that date, the Government

filed a Supplemental Response **[DE 414]**, followed by Defendant Kemp's Memorandum on

October 21, 2010 **[DE 415]**. The Government moved to strike Defendant Kemp's

supplemental memorandum as both being untimely filed and raising a new ground for relief

that had not been previously raised in the pleadings or during the hearing. **[DE 416]**. Defendant Kemp filed a response thereto. **[DE 454]**.

Although the Government's motion to strike is proper, as addressed via separate order, the Court considered all post-hearing filings in reaching its conclusions in this case. The undersigned notes that Defendant Kemp failed to meet his burden of establishing a legitimate expectation of privacy in the bedroom he allegedly rented from his mother, Rosa Darling. Thus, even taking into consideration the untimely expectation of privacy argument, his motion to suppress still fails.

## Motion to Suppress

Defendant Kemp moved to suppress all items seized from his bedroom on March 23, 2010, arguing only that the consent to search provided by Ms. Darling, the homeowner, was not freely and voluntarily given.[1] The Government argued that (1) based upon the arrest warrant, the agents had the authority to enter the residence, conduct a protective sweep, and seize any items in plain view; and (2) Ms. Darling freely and voluntarily consented to the search.

---

[1]As noted *supra*, in his post-hearing submission, Defendant Kemp raised the additional argument that Ms. Darling could not consent to the search of his room because he had an expectation of privacy as a lessor, which is fully addressed via separate order.

CASE NO.: 10-cr-20410-LENARD/Turnoff

I.    **Testimony and Findings of Fact**

The Court heard testimony from Government witness Federal Bureau of Investigations ("FBI") Special Agent Lionel S. Lofton, Jr.[2], and defense witness Rosa Darling, Defendant Kemp's mother.

Defendant Kemp lives with Ms. Darling. He occupies a room in her residence that is accessible from inside the house through double french doors and has a separate entrance from the outside as well. Ms. Darling testified that Defendant Kemp pays her rent for the use of the bedroom. Although she has access to the bedroom as the owner of the house, she is not allowed to open its door.[3]

On March 23, 2010, Agent Lofton, along with several other agents, arrived at Defendant Kemp's residence with a warrant for his arrest. Agent Lofton testified that, upon knocking at the door and announcing their presence, Ms. Darling identified herself as Defendant Kemp's mother and advised that he was not home. The FBI agents proceeded to conduct a protective sweep of the residence limited to spaces where a body could be concealed. According to Ms. Darling, the agents proceeded to "tear up" Defendant Kemp's

---

[2]Agent Lofton has been a special agent with the FBI since 1996.  He is currently assigned to the High Intensity Drug-Trafficking Area ("HIDTA") task force.

[3]As set forth in detail in the order addressing the Government's Motion to Strike, no further evidence was presented to support the allegation that Defendant Kemp rented the bedroom from his mother.

CASE NO.: 10-cr-20410-LENARD/Turnoff

bedroom, which she had to unlock for them. Agent Lofton testified that, at the time they conducted the protective sweep, the door to Defendant Kemp's room was open and did not have a lock from the interior of the house. During the protective sweep, the agents observed, in plain view, what appeared to be marijuana in a lidless garbage can in Defendant Kemp's bedroom, as well as a digital scale on the night stand. Upon determining that Defendant Kemp was not in the residence, the agents holstered their weapons.

After the protective sweep was completed, Agent Lofton, along with a female agent, sat with Ms. Darling in her living room and explained the arrest warrant and related matters to her. Agent Lofton advised Ms. Darling that they observed marijuana during the protective sweep and asked her if there were any other drugs in the house. Ms. Darling responded that, to her knowledge, there should not be any drugs in her house.

Agent Lofton then requested Ms. Darling's permission to conduct a search of the residence and advised her that she did not have to give her consent if she did not want to. Agent Lofton presented Ms. Darling with a standard FBI consent form, which he read and explained to her. Ms. Darling indicated that she understood same and provided her consent to the search by executing the form. In contrast, Ms. Darling testified that she did not know that the agents were only in possession of an arrest warrant and not a search warrant, that Agent Lofton would not tell her why they were arresting Defendant Kemp until the following day, and that it was only after they searched her residence that Agent

Lofton asked for her consent and explained the form to her. Ms. Darling agreed that Agent Lofton was courteous and did not have a weapon drawn when he spoke to her.

Upon execution of the consent form, the agents proceeded to conduct a search of the residence which yielded, *inter alia*, a semiautomatic pistol, a visa card, bags with individually packaged bags of marijuana, a digital scale, a sifter, a holster for a firearm, a prescription, pills, and bags believed to contain cocaine residue. According to Ms. Darling, she did not know that these items were in the house. Agent Lofton presented Ms. Darling with a property receipt identifying the various items that had been seized, which she executed. Ms. Darling testified that Agent Lofton had her sign the consent form and the property receipt at the same time—after they had searched the house.

Before leaving, Agent Lofton asked Ms. Darling if she could assist in locating Defendant Kemp. Later that day, Ms. Darling called Agent Lofton to advise that Defendant Kemp was at her mother's house. Based upon this information, the agents proceeded to arrest Defendant Kemp, without incident, at his grandmother's house.

On June 3, 2010, Agent Lofton returned to Defendant Kemp's residence to execute another arrest warrant.[4] Ms. Darling again provided her consent to search the residence by executing another FBI consent form.

---

[4]Defendant Kemp was out on bond on the charges for which he was arrested on March 23, 2010.

CASE NO.: 10-cr-20410-LENARD/Turnoff

Finally, Ms. Darling confirmed that she had been previously convicted in the State of Florida for fraud and grand theft, although she would not admit that the grand theft charge constituted a felony.

## II.    Discussion and Conclusions of Law

"It is well-settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable...subject only to a few specifically established and well-delineated exceptions.'" Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043 (1973) (quoting Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967)). One of those exceptions is a search conducted pursuant to voluntary consent. United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). Another is a protective sweep upon execution of a valid arrest warrant. Maryland v. Buie, 494 U.S. 325, 334, 110 S.Ct. 1093, 1098 (1990) (holding that "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from where an attack could be immediately launched"). Under these exceptions, the evidence obtained in this case does not need to be suppressed.

### A.    Items Seized During Protective Sweep.

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to

Page 6 of  12

CASE NO.: 10-cr-20410-LENARD/Turnoff

a cursory visual inspection of those places in which a person might be hiding." <u>Buie</u>, 494 at 327, 110 S.Ct. 1094; <u>United States v. Bennett</u>, 555 F.3d 962, 965-66 (11th Cir. 2009). Here, the agents were executing an arrest warrant for Defendant Kemp. Upon being advised by Defendant Kemp's mother that he was not in the house, the agents properly conducted a protective sweep of the premises to confirm his absence and that no other person was being concealed therein who might present a threat.

The protective sweep led to the discovery of evidence in plain view. Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 375, 113 S.Ct. 2130, 2136-37 (1993); <u>Accord</u> <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 489, 91 S.Ct. 2022, 2049 (1971) (police are not required to "avert their eyes"). "If contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment...." <u>Dickerson</u>, 508 U.S. at 375, 113 S.Ct. at 2137; <u>Accord</u> <u>United States v. Purcell</u>, 236 F.3d 1274, 1277 (11th Cir. 2001).

As set forth *supra*, the agents observed the marijuana and digital scale in plain view while conducting a protective sweep incident to the execution of a valid arrest warrant. Thus, they were authorized by the Fourth Amendment to seize the incriminating items

without a warrant.

## B.    Items Seized During Consent Search.

"In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." Garcia, 890 F.2d at 360. The burden is on the Government to prove that the consent was voluntary. United States v. Tovar-Rico, 61 F.3d 1529, 1536 (11th Cir. 1995). Voluntariness is a question of fact to be determined in light of the totality of the circumstances. United States v. Mendenhall, 446 U.S. 544, 557, 100 S.Ct. 1870, 1879 (1980); Schneckloth, 412 U.S. at 248-49, 93 S.Ct. 2059. Coercion "by explicit or implicit means, by implied threat or covert force" is not allowed. Schneckloth, 412 U.S. at 228, 93 S.Ct. at 2048. Factors relevant to the consideration of voluntariness include "the presence of coercive police procedures, the extent of the person's cooperation with the officer, the person's awareness of his or her right to refuse consent, the person's education and intelligence, and the person's belief that no incriminating evidence will be found." Purcell, 236 F.3d at 1281.

Defendant Kemp argued that Ms. Darling's consent was an acquiescence to the show of authority and a ratification of what had already been done. He argued that a coercive environment resulted from the presence of numerous agents in the house in the early morning hours inquiring about incriminating items of which Ms. Darling had no knowledge. However, these circumstances, alone, do not support a finding of coercion. See

CASE NO.: 10-cr-20410-LENARD/Turnoff

United States v. Hidalgo, 7 F.3d 1566, 1567 (11th Cir. 1993) (upholding consent as voluntary where a SWAT team woke the defendant and his wife upon entry and held them to the floor at gunpoint until other officers arrived moments later). Moreover, although Defendant Kemp alleged that the agents threatened Ms. Darling with "tearing up" her home if she did not consent to the search, Ms. Darling never testified that the agents threatened her in this or any other way. In fact, her testimony was that Agent Lofton was courteous to her and did not have any weapons drawn while speaking to her. In any event, consent has been upheld in similar circumstances. See United States v. Long, 866 F.2d 402, 405 (11th Cir. 1989) (holding consent voluntary where officers asked for consent to search, stating that, if refused, they would "dig the place up"). Finally, the fact that Ms. Darling contacted Agent Lofton later that day to advise of Defendant Kemp's whereabouts, coupled with her execution of a second consent to search form a few months later, undercut any allegations of coercion.

Thus, the undersigned finds that Ms. Darling freely and voluntarily gave her consent to search her residence and did not execute the consent to search form under duress or coercion from the agents.

## A.    Credibility

The credibility of witnesses is often the key issue in determining whether to suppress evidence. In this case, the question is whether Ms. Darling freely and voluntarily

consented to the search of her residence. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). In making such credibility determinations, the Court must consider the interests of the witnesses, as well as "'the internal consistency of the [witness'] testimony, or [her] candor or demeanor on the stand.'" Id. (quoting Gallego v. United States, 174 F.3d 1196, 1198 (11th Cir. 1999).

There is a conflict between the testimony of Agent Lofton and Ms. Darling with respect to the sequence of events leading up to her execution of the consent to search form, as well as whether the door to Defendant Kemp's bedroom was locked. Ms. Darling maintained that Agent Lofton explained the consent form to her after they had already searched her house and that she signed the consent form and the property receipt at the same time. Agent Lofton testified that the consent form was presented to Ms. Darling after they had conducted the protective sweep and observed the incriminating items in plain view, while the property receipt was presented to her after they conducted the search pursuant to her consent.

Based upon a review of the testimony, and observing the demeanor and interests of the witnesses, the Court concludes that Ms. Darling's testimony was not as credible as Agent Lofton's testimony. United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004)

(recognizing that credibility determinations are within the province of the fact finder). Ms. Darling admitted that she had been previously convicted of fraud and grand theft, both of which are crimes of dishonesty, and she has an obvious interest in Defendant Kemp as his mother. While she claimed that she felt scared, she did not testify to any behavior by the agents that was threatening or coercive. On the contrary, she testified that Agent Lofton was courteous and did not have his weapon drawn when addressing her.

Accordingly, based upon the credible testimony of Agent Lofton, the Court finds that, Ms. Darling freely and voluntarily executed the consent to search form prior to a search of her house, which properly included Defendant Kemp's bedroom. As such, the undersigned finds that the evidence in this case was obtained by the agents during a protective sweep and a valid consent search and need not be suppressed.

### Recommendation

Considering the totality of the circumstances in this case, it is hereby **RESPECTFULLY RECOMMENDED** that Defendant Dexter Earl Kemp's Motion to Suppress **[DE 306]** be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(c), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Judge, within fourteen (14) days of receipt. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark

CASE NO.: 10-cr-20410-LENARD/Turnoff

Builders, Inc., 996 F.2d 1144 (11th Cir. 1993); LoConte v. Dugger, 847 F.2d 745 (11th Cir.

1988).

RESPECTFULLY RECOMMENDED in Chambers, at Miami, Florida, this ___ day of

November 2010.

**WILLIAM C. TURNOFF**
**United States Magistrate Judge**

cc:   Hon. Joan A. Lenard
      All counsel of record